JAMES DREWRY, ADMINISTRATOR OF THE ESTATE OF ROGER McKINLEY DREWRY, DECEASED, PLAINTIFF v. NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, DEFENDANT

No. COA03-1390

(Filed 1 February 2005)

**Tort Claims Act— negligence—maintenance of public highways—standing water on roadway**

The Industrial Commission did not err by dismissing plaintiff's negligence action against defendant Department of Transportation (DOT) and two of its employees based on its findings of fact that there was no evidence of a standard of care required by DOT for design and maintenance of water flow vis-a-vis public roads such as N.C. Highway 217 and that there was no evidence in the record that the water was backed up from the area of the pertinent pipe due to the water having entered the roadway from the pertinent field, because: (1) while plaintiff's expert evidence may have indicated a 42-inch pipe should have been installed, it fails to indicate a standard of care or duty required by DOT to install a 42-inch pipe; (2) the evidence shows that the silt from the recently disked field caused the drain pipe to clog, which in turn, caused water to flow across the highway as opposed to the drain in the ditch; and (3) in addition to failing to prove that DOT owed a specific duty or that it breached any duty, plaintiff's evidence did not show that DOT's failure to install a 42-inch drainage pipe proximately caused plaintiff decedent's accident.

Appeal by plaintiff from opinion and award filed 30 July 2003 by the North Carolina Industrial Commission. Heard in the Court of Appeals 26 May 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General Robert T. Hargett, for the State.*

*Reid, Lewis, Deese, Nance & Person, by James R. Nance, Jr., for plaintiff-appellant.*

BRYANT, Judge.

James Drewry[1] (plaintiff) appeals from an opinion and award of the Full Commission (Commission) filed 30 July 2003 dismissing plaintiff's negligence action against the North Carolina Department of Transportation (NCDOT) and two of its employees.

This case was heard before a Deputy Commissioner on 14 October 2002. Defendant's motion to dismiss at the close of plaintiff's evidence was granted and an order was filed on 1 November 2002. Upon appeal, the Commission made the following findings to which the plaintiff assigns no error[2]:

1. On April 15, 1996, at approximately 9:15 p.m., one to two inches of water was standing in a 90-100 foot long pond on North Carolina Highway 217, (N.C. 217), 0.8 miles south of Linden in Cumberland County. The weather records from nearby monitoring stations show that it had rained heavily, up to two inches that day. The evidence shows that silt from an adjacent field, which had been recently disced for farming, had washed out of the field and clogged a drainage ditch that ran parallel to the roadway. This caused water to flow across the roadway instead of down the ditch to a highway drainpipe under the roadway and created the aforementioned pond.

2. On April 15, 1996, the decedent, Roger Drewry, was driving his 1995 Pontiac Trans Am V-8 Convertible. Plaintiff-decedent left home and with a passenger, Lee Morgan, and drove to Fayetteville, North Carolina. After shopping, plaintiff-decedent and Mr. Morgan returned to Linden. After leaving U.S. 401 [N]orth, plaintiff-decedent and Mr. Morgan proceeded down N.C.

---

1. Administrator of the estate of Roger McKinley Drewry, deceased.

2. Accordingly, these findings are deemed supported by competent evidence and are binding on appeal. *See Watson v. Employment Sec. Comm'n,* 111 N.C. App. 410, 412, 432 S.E.2d 399, 400 (1993).

DREWRY v. N.C. DEP'T OF TRANSP.

[168 N.C. App. 332 (2005)]

217 [N]orth towards Linden at 50 to 55 miles per hour. Plaintiff-decedent ran into the standing water, lost control of his car, left the roadway and overturned. Plaintiff-decedent and Mr. Morgan were thrown from the vehicle and pinned underneath it. Mr. Morgan freed himself; however, even with the help of two others who stopped to assist, he could not free plaintiff-decedent. Plaintiff-decedent died at the scene of the accident. Trooper Minchew with the Highway Patrol investigated the accident and testified that standing water and driver's speed were contributing causes to the accident.

3. On July 3, 1995, Mr. Denning contacted the [NCDOT] concerning standing water problems on N.C. 217 at the scene of the subsequent accident. Thomas Burchell, a DOT Transportation Supervisor III in charge of roadway maintenance for that area responded. Mr. Burchell investigated the complaint and determined the ditch had silted in and following [NCDOT] practice determined that the ditch needed to be cleared and a berm built. On July 3, 1995, while investigating Mr. Denning's complaint Mr. Burchell took a video of the area. Mr. Burchell later showed the video to his supervisor Hugh Matthews who concurred with Mr. Burchell's remedial recommendations.

4. Records reflect that Mr. Burchell's crew members as of August 21, 1995 had completed the remedial work. Mr. Burchell periodically checked the area to see if the action which had been taken to correct the problem had its desired effect. Mr. Burchell believed that it did and [NCDOT] received no further complaints of drainage problems in that area until after plaintiff-decedent's accident on April 15, 1996. While plaintiff presented witnesses who testified that they encountered standing water on N.C. 217, no one notified [NCDOT] of the problems they encountered.

5. Plaintiff contends that the reason water was standing on the roadway was that a twenty-four inch drainage pipe located approximately one hundred feet down from the silted-over ditch was inadequate to handle the amount of water from the rainfall which occurred on the date of the accident. Plaintiff's hydrology expert, James A. Spangler, II, testified that the drainage area into the ditch and pipe located adjacent to and under N.C. 217 was thirty-one acres plus or minus and included cultivated land. Mr. Spangler testified that [NCDOT] regulations indicate in some instances that oversized piping can or should be used in order to allow for obstructions. However, the twenty-four inch pipe was

some distance from the silted area of the ditch which caused the flooding. Further, Mr. Spangler testified that the twenty-four inch pipe, had it been unobstructed, was adequate to handle the flow of water which fell on April 15, 1996[3].

6. Robert Godwin, the fire chief of Linden, responded to the emergency call for [the] accident. Mr. Godwin spoke with the passenger Lee Morgan at the scene of the accident. Mr. Morgan stated to Mr. Godwin that he (Morgan) had come through the same area of N.C. 217 about twenty minutes before the accident occurred. Mr. Godwin further testified that whenever he noticed water hazards in the roadway he would contact the Cumberland County Emergency Operations Center, but he never directly contacted DOT.

. . .

9. [NCDOT] had no prior notice of N.C. 217 being flooded on April 15, 1996 prior to the accident that killed plaintiff-decedent.

The Commission also found as fact the following, to which plaintiff did assign error:

7. Plaintiff-decedent and Mr. Morgan had passed through the flooded area in question approximately twenty minutes prior to the time of the accident in question here and were aware that the road was flooded prior to the accident.

8. Plaintiff has failed to offer any evidence as to what relevant [NCDOT] regulations and standards require as to design and maintenance of roads such as N.C. 217 including the design and control of water flow.

. . .

10. In this situation, the problem was not the drainage pipe but the area where the water ran out of the field into the ditch. Plaintiff presented no testimony that the water after running out of the field was backed up from the point of entering the ditch down to the location of the pipe running under the roadway, but that the water ran directly out of the field into the roadway. Plaintiff presented no testimony that the water was ponded at the location of the pipe under the roadway. Plaintiff presented no testimony as to whether the ditch was properly designed or negli-

---

3. Plaintiff assigned error to finding #5, but failed to argue same in his brief; it is therefore deemed abandoned. N.C. R. App. P. 28(a) (2003).

gently designed or maintained. Plaintiff only presented testimony that water was in the roadway. Plaintiff offered no standard to compare and determine whether there was negligence on the part of defendant in maintaining N.C. 217.

Based on these findings, the Commission concluded that plaintiff: (1) failed to prove his case by the greater weight of the evidence with respect to the standard of care or duty owed by NCDOT or their employees to either plaintiff-decedent or the public; and (2) failed to prove his case by the greater weight of the evidence that NCDOT's actions were the proximate or the contributing cause of the accident or injuries to plaintiff-decedent. Further, the Commission concluded that plaintiff-decedent was contributorily negligent by having driven in the same location twenty minutes prior to the accident and failing to take driving precautions of a reasonable person given the known road and weather conditions. Plaintiff appeals from the opinion of the Commission.

_____

The dispositive issue for our review is whether the Commission erred in findings of fact #8 and #10, respectively, that there was no evidence of a standard of care required by NCDOT for design and maintenance, nor evidence that the water was backed up from the area of the pipe, due to water having entered the roadway from the field.

Plaintiff first argues the Commission erred in findings of fact #8 and #10 that there was no evidence of a standard of care required by NCDOT for design and maintenance of water flow vis-a-vis public roads such as N.C. Highway 217. In a related assignment of error, plaintiff argues the Commission erred in findings of fact #10 that there was no evidence in the record that the water was backed up from the area of the pipe, due to the water having entered the roadway from the field. In these two assignments of error, plaintiff is essentially arguing that NCDOT's failure to install a 42-inch drainage pipe proximately caused Drewry's accident. We disagree.

The [NCDOT] is subject to a suit to recover damages for death caused by its negligence only as is provided in the Tort Claims Act. *Davis v. Highway Commission*, 271 N.C. 405, 408, 156 S.E.2d 685, 687 (1967). The Tort Claims Act states in part, "the Industrial Commission shall determine whether or not each individual claim arose as a result of the negligence of any officer, employee . . . under circumstances where the State of North Carolina, if a private person,

would be liable to the claimant in accordance with the laws of North Carolina." N.C. Gen. Stat. § 143-291(a) (2003).

Our Court has previously ruled on the standard of review for tort claims from the Commission. "Under the Tort Claims Act, 'when considering an appeal from the Commission, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision.' " *Smith v. N.C. Dep't of Transp.*, 156 N.C. App. 92, 97, 576 S.E.2d 345, 349 (2003) (quoting *Fennell v. N.C. Dep't of Crime Control & Pub. Safety*, 145 N.C. App. 584, 589, 551 S.E.2d 486, 490 (2001)); *see* N.C.G.S. § 143-293 (2003). Our Supreme Court has explained the role of appellate courts in cases appealed from the North Carolina Industrial Commission holding, an appellate court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000) (citation omitted).

Under the Tort Claims Act, N.C. Gen. Stat. § 143-291(a) (2003), "negligence is determined by the same rules as those applicable to private parties." Plaintiff must show that "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." *Woolard v. N.C. Dept. of Transportation*, 93 N.C. App. 214, 217, 377 S.E.2d 267, 269 (1989) (quoting *Bolkhir v. N.C. State Univ.*, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988)).

Additionally, under the Tort Claims Act:

> [T]he burden of proof as to [negligence is] on the plaintiff. Evidence is usually not required in order to establish and justify a finding that a party has failed to prove that which he affirmatively asserts. It usually occurs and is based on the absence or lack of evidence.

*Bailey v. N.C. Dept. of Mental Health*, 2 N.C. App. 645, 651, 163 S.E.2d 652, 656 (1968); *Viar v. N.C. DOT*, 162 N.C. App. 362, 364, 590 S.E.2d 909, 912 (2004) ("The plaintiff has the burden of proof on the issue of negligence."); *Griffis v. Lazarovich*, 161 N.C. App. 434, 443, 588 S.E.2d 918, 924 (2003) (negligence was not presumed from the

"mere happening of an accident" . . . [when the plaintiff] failed to meet [his] burden of proving negligence).

In examining whether NCDOT failed to meet the standard of care owed to a plaintiff, we note that our Supreme Court has held that the public duty doctrine applies to causes of action under the Tort Claims Act:

> The general common law rule provides that governmental entities, when exercising their statutory powers, act for the benefit of the general public and therefore have **no duty to protect specific individuals.** Because the governmental entity owes no particular duty to any individual claimant, it cannot be held liable for negligence for a failure to carry out its statutory duties. Absent a duty, there can be no liability.

*Stone v. N.C. Dept. of Labor*, 347 N.C. 473, 482, 495 S.E.2d 711, 716 (1998) (internal citations omitted) (emphasis supplied).

The NCDOT possesses the statutory authority to plan, construct, maintain, and operate the system of public highways in this State. N.C. Gen. Stat. § 143B-346 (2003); *C.C.T. Equipment Co. v. Hertz Corp.*, 256 N.C. 277, 282, 123 S.E.2d 802, 806 (1962). The NCDOT is vested with broad discretion in carrying out its duties and the discretionary decisions it makes are not subject to judicial review "unless [their] action is so clearly unreasonable as to amount to oppressive and manifest abuse." *State Highway Comm'n v. Greensboro City Bd. of Education*, 265 N.C. 35, 48, 143 S.E.2d 87, 97 (1965).

In the instant case, the evidence shows that at some point prior to July 1995, NCDOT installed a 24-inch drain pipe in the ditch along N.C. Highway 217. Plaintiff offered into evidence the steps taken by NCDOT in July 1995 after a farmer, Mr. Denning notified the agency of standing water on N.C. Highway 217. NCDOT employee, Thomas Burchell, testified that he surveyed, video-taped and conferred with his supervisor as to the recommended measures to take in order to eliminate standing water on the roadway. The repairs included clearing ditches and putting in an earthen berm. Once completed, Burchell drove by the site on occasion to observe the repairs. The NCDOT received no further complaints of standing water until plaintiff-decedent's accident which occurred on N.C. Highway 217 on 15 April 1996 at about 9:15 p.m. after a heavy rain.

In attempting to show evidence of a standard of care requiring a 42-inch drain pipe, plaintiff points to certain testimony in the record.

**DREWRY v. N.C. DEP'T OF TRANSP.**

[168 N.C. App. 332 (2005)]

Plaintiff's expert hydrologist James Spangler testified as to different methods that NCDOT may use in determining drain pipe size based on variable amounts of rainfall. Spangler stated that he used a method called the "TR-55 method" to study the 24-inch drain pipe's capacity to carry water run-off based on a 25-year rainfall event[4], while acknowledging that there are four different methodologies used to calculate water flow. Spangler testified that "our calculations show that a two inch rainfall event would have been carried efficiently by the 24-inch culvert that existed out there had it not been blocked." While plaintiff's expert evidence may have indicated a 42-inch pipe should have been installed, it fails to indicate a standard of care or duty required by NCDOT to install a 42-inch pipe. Therefore it appears the Commission's findings, that plaintiff presented insufficient evidence to establish NCDOT's standard of care, are supported by competent evidence.

Plaintiff also argues the Commission erred in finding of fact #10 when it found there was no evidence the water was backed up from the pipe. We disagree. The evidence shows that the silt build-up that created the flooding on the roadway came from a combination of the farmer's discing the field and the heavy rainfall. In other words, standing water in the highway occurred when the adjacent, silt-clogged ditch, prevented excess water from reaching the drainage pipe. Both water and silt were observed in the clogged drain pipe as the recently exposed soil filled the ditch with silt which then caused excess water to run onto the highway.

Plaintiff's expert Spangler testified "in some instances that over-sized piping can or should be used in order to allow for obstructions." However, the 24-inch pipe was some distance away from the silted area of the ditch which caused the flooding. Further, Spangler testified "the 24-inch pipe, had it been unobstructed was adequate to handle the flow of water which fell on April 15, 1996." We note the unchallenged findings of the Commission indicating that silt from the recently disced field cause the drain pipe to clog, which in turn, caused water to flow across the highway as opposed to the drain in the ditch. Therefore, there is sufficient competent evidence to support the Commission's findings of fact #10.

---

4. A "25-year event", with respect to rainfall, is defined by plaintiff's expert hydrologist as the calculation of "the amount of water that would be expected at a particular point based on drainage area and soil types and precipitation and other coefficients having to do with friction and how water travels across the landscape" over a twenty-five-year time period.

In addition to failing to prove that NCDOT owed a specific duty or that it breached any duty, plaintiff's evidence did not show that the NCDOT's failure to install a 42-inch drainage pipe proximately caused Drewry's accident.

> Proximate cause is a cause. which in natural and continuous sequence, unbroken by any new and independent cause, produced [a] plaintiff's injuries, and without which the injuries would not have occurred, and one from which a person of ordinary prudence could have reasonably foreseen that such a result, or consequences of a generally injurious nature, was probable under all the facts as they existed.

*Woolard*, 93 N.C. App. at 218, 377 S.E.2d at 270 (1989) (quoting *Hairston v. Alexander Tank & Equipment Co.*, 310 N.C. 227, 233, 311 S.E.2d 559, 565 (1984)).

Plaintiff offered no evidence tending to show that plaintiff-decedent Drewry could or would have survived the accident had the 42-inch drainage pipe been installed. Plaintiff's evidence here lacked key facts to meet his burden of proving that NCDOT's actions were the proximate cause of the accident. *See Bailey*, 2 N.C. App. 645, 651, 163 S.E.2d 652, 656 (1968). NCDOT received notice of the flooded roadway in 1996 only *after* plaintiff-decedent's fatal accident *and* after having repaired, maintained and inspected the area for the year prior. Upon learning of Drewry's accident, NCDOT revisited the scene noting. the farmer had again disced the field and the previously installed berm from 1995 was no longer in place. Here, the Commission concluded, based on the lack of plaintiff's evidence as to NCDOT's standards required to maintain the highway, and the facts showing an independent cause of the water flooding the road, plaintiff failed to meet his burden of proving NCDOT's negligence. Therefore, we find the Commission made adequate findings of fact to support such a conclusion. Plaintiff also challenges the Commission's finding of fact #7. Because this finding of fact concerns contributory negligence, and as we have determined the Commission did not err in dismissing plaintiff's negligence action, it is not necessary to address this issue.

We affirm the Commission's opinion and award dismissing plaintiff's negligence action.

Affirmed.

Judges TYSON and STEELMAN concur.